IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Neva Steffens,       )<br>                              )<br>            Plaintiff,    )<br>                              )<br>    vs.                       )<br>                              )<br>American Home Mortgage )<br>Servicing, Inc.,          )<br>                              )<br>            Defendant.  )<br>_____) | Civil Action No. 6:10-1788-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

On August 19, 2010, the defendant filed a motion to dismiss. By order filed August 20, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if she failed to adequately respond to the motion. The plaintiff filed her opposition to the motion on September 22, 2010, and the defendant filed a reply on October 4, 2010.

**FACTS PRESENTED**

The plaintiff, who is proceeding *pro se*, states in her complaint that the Emergency Economic Stabilization Act of 2008 ("EESA") granted the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program ("TARP") (compl. ¶¶

10-12).  She claims that under the EESA, the Secretary and Director of the Federal Housing Finance Agency created the Home Affordable Modification Program ("HAMP") (*id.* ¶ 18). The plaintiff claims that she applied for a loan modification under HAMP with the defendant (*id.* ¶ 34).  The plaintiff alleges that the defendant informed her that she had been approved for a modified loan (*id*. ¶ 35).  However, she rejected the defendant's offer to modify the loan because she did not think the original modification followed the Treasury Guidelines for HAMP (*id*. ¶ 41).  The plaintiff claims the defendant ignored the monthly income she submitted under oath in her application and substituted its own arbitrary and higher figure, which was used to determine her monthly payment (*id.* ¶¶ 37-38).  She further claims that the defendant "bloated" her mortgage with charges that it was not allowed to collateralize (*id.* ¶ 39).  Subsequently, the plaintiff submitted a second application for HAMP modification (*id*. ¶ 41).  In response, the plaintiff claims the defendant informed her that she was ineligible for HAMP because she did not accept the original modification that was offered and did not make her first HAMP trial period payment when it was due (*id.* ¶ 43).  As a homeowner has only one opportunity to be approved for the program, the rejection terminated the plaintiff's eligibility for this relief (*id.* ¶ 45).

In her complaint, the plaintiff alleges three causes of action based on the defendant's alleged failure to offer the amount of modification she wanted:  (1) violation of due process, (2) unfair trade practices under 15 U.S.C. § 45(n) of the Federal Trade Commission Act, and (3) breach of implied covenant of good faith and fair dealing under the Servicer Participation Agreement between the defendant and Fannie Mae.  In her response to the motion to dismiss, the plaintiff withdrew her cause of action for unfair trade practices under 15 U.S.C. § 45(n) (pl. resp. m. to dismiss at 19 ("[I]t is conceded that a cause of action to enforce a provision under the Federal Trade Commission Act cannot be brought by Plaintiff.  Accordingly, this claim is withdrawn.")).  Thus, only the first and third causes of action remain at issue.

## **APPLICABLE LAW**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must determine whether the complaint sets forth sufficient facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Even though a complaint's allegations are viewed in a light most favorable to the plaintiff, the claim presented must be "plausible." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556). Therefore, for a complaint to survive a motion to dismiss, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002)).

The pleadings of a *pro se* party are entitled to liberal construction and are held to a less stringent standard than those drafted by attorneys. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). "Even under this less stringent standard, however, the *pro se* complaint is subject to summary dismissal. The liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, or construct the plaintiff's legal arguments for him, or 'conjure up questions never squarely presented' to the court." *Leneau v. Aplin*, C.A. No. 4:09-932-CMC-TER, 2009 WL 1749430, at *2 (D.S.C. Jun. 22, 2009) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985)) (internal citations omitted). "The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." *Id.* (citing *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 390-91 (4th Cir. 1990)).

3

## ANALYSIS

***HAMP***

The defendant first argues that the plaintiff's claims should be dismissed because they are all based upon HAMP and related legislation and laws, and borrowers have no private cause of action under these statutes. This court agrees. While no court in this district has analyzed whether a private cause of action exists under HAMP, courts in other districts have uniformly recognized that denial of a loan modification under HAMP does not create a private cause of action. *See, e.g., Dugger v. Bank of America*, No. 1:10CV00076, 2010 WL 3258383, at *2 (E.D. Mo. Aug. 16, 2010) (dismissing claims under Rule 12(b)(6) and stating that "neither EESA, TARP, nor HAMP provides a private right of action to individual borrowers"); *Zeller v. Aurora Loan Servs., LLC*, No. 310cv00044, 2010 WL 3219134, at *1 (W.D. Va. Aug. 10, 2010) (stating that Congress did not permit a private cause of action under HAMP); *Marks v. Bank of Am., N.A.*, No. 03:10-cv-08039-PHX-JAT, 2010 2572988, at **5-7 (D. Ariz. June 22, 2010) (holding that the HAMP Guidelines and EESA do not provide a private cause of action).

The plaintiff denies that she is bringing a private cause of action under HAMP, but the complaint and her response to the motion to dismiss prove otherwise. HAMP, TARP, EESA, and the Treasury Guidelines are the foundation of each claim. Virtually every paragraph in the complaint references HAMP and related legislation and regulations. Despite the fact that she did not label her claims as "HAMP violations," the underlying factual and legal basis for each is squarely based on HAMP. *See Zendejas v. GMAC Wholesale Mortg. Corp.*, No. 1:10-cv-00184 OWW GSA, 2010 WL 2490975, at **3-4 (E.D. Cal. June 16, 2010) (dismissing plaintiffs' claims that GMAC failed to offer them "an acceptable loan modification" in light of their declining income; court noted that although the plaintiffs did not separately identify any of their claims as arising under HAMP, they made numerous references to the program as a basis for their claims).

***Due Process***

The defendant further argues that the plaintiff's due process claim fails because she has no protected property interest in a loan modification. "To prevail on [her] due process claim, Plaintiff[] must first show a deprivation of a protected liberty or property interest." *Williams v. Geithner*, No. 09-cv-1959, 2009 WL 3757380, at *5 (D. Minn. Nov. 9, 2009) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972)). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). To establish a protected property interest, the person must have

> more than an abstract need or desire for [a benefit]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Roth*, 408 U.S. at 577. The EESA, the Guidelines, and the Servicer Participation Agreement "did not intend to create a property interest in loan modifications for mortgages in default." *Williams*, 2009 WL 3757380, at *6.

First, as argued by the defendant, no mandatory language in the EESA imposes on the Treasury Secretary an absolute duty to consent to loan modifications. *Id*. In fact, the EESA shows the intent of Congress to give the Secretary discretion because it allows loans to be modified "where appropriate." *Id.* (citing 12 U.S.C. § 5219(c)). Further, EESA section 109(c) also provides that the Secretary must consider the net present value ("NPV") to the taxpayer, which means that "loan modifications are not an entitlement, but are linked to decisions that result in profits to taxpayers. Congress did not intend to mandate loan modifications." *Id.*

In addition, the Treasury Guidelines "clearly demonstrate that the Secretary allowed the exercise of some discretion, including calculation of the NPV, to servicers." *Id.*

(analyzing components of NPV calculation and opportunities for servicer input in the calculation and modification decision).

Finally, the district court in *Williams* recognized that no protected property interest exists because the decision to modify a loan is based on a servicer's business decisions:

> Loan servicers seek to maximize their investments, and in doing so, make profitability determinations between modification or foreclosure, based in part on predictions about an individual borrower's likelihood of default. If the Secretary prescribed the exact criteria all servicers must use to determine whether a loan has a positive NPV (and therefore should be modified if the other criteria are satisfied) then servicers may choose to forego participating in the HAMP program so that they are not forced to modify loans that do not make financial sense. While Congress required the Secretary to implement a plan to assist distressed homeowners, that plan not only made servicer participation voluntary, but also afforded to program participants discretion on several variables that impact the NPV determination.

*Id*. at *7. For the same reasons described in *Williams*, the plaintiff was not entitled to a loan modification and, therefore, has no protected property interest that could lead to a violation of due process.

In her opposition to the motion to dismiss, the plaintiff cites several cases, but these do not address a due process argument related to HAMP modifications (*see* pl. resp. m. to dismiss 14-18). In addition to the *Williams* case discussed above, a district court in California recently found that HAMP does not provide a "protected property interest" for due process. In *Huxtable v. Geithner*, No. 09cv1846 BTM (WVG), 2010 U.S. Dist. LEXIS 91382 (S.D. Cal. Sept. 2, 2010),[1] the court held that not only was the Secretary of the Treasury not obligated to agree to loan modifications, neither were servicers (such as the defendant). The court noted that "servicers have discretion to modify key variables in the NPV model"

---

[1] At the time of the filing of this report, this case was unavailable on WESTLAW.

giving servicers "the right to determine, at least to some extent, who is eligible and who is not." *Id.* at *14. For these and other reasons, the court found that HAMP does not provide a protected property interest. *Id.*; *see also de la Salle v. America's Wholesale Lender*, No. CIV S-09-02701-MCE-KJM, 2010 U.S. Dist. LEXIS 36319, at *3 (E.D. Cal. April 13, 2010) (dismissing due process claims, stating that to the extent the claims were based on HAMP, TARP, or the National Housing Act, "there is no private right of action afforded under those statutes nor do they create a protected property interest").[2]

The plaintiff's due process claims also fail because the defendant's conduct is not attributable to the State. The Fourteenth Amendment explicitly prohibits actions only by a State. *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) ("Since this Court's decision in the Civil Rights Cases, 109 U.S. 3 (1883), 'the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States.'") (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). "'[M]erely private conduct, no matter how discriminatory or wrongful,' fails to qualify as a state action." *Phillips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009) (quoting *Mentavlos v. Anderson*, 249 F.3d 301 (4th Cir. 2001)). Private activity generally will not be deemed to be state action "unless the state has so dominated such activity as to convert it to state action." *Id.*

The plaintiff alleges that a "symbiotic relationship" exists between a state entity and a private entity because "[t]he government created corporation Federal National Mortgage Corporation (a/k/a Fannie Mae) and mortgage bankers and servicers such as American Home Mortgage Servicers are partners in a joint endeavor to overcome a housing crisis. This partnership has been forged though a formal agreement, accompanied by a substantial financial commitment to private entities such as Defendant" (compl. ¶¶ 47-48).

---

[2]This case was also unavailable on WESTLAW.

The plaintiff has not alleged facts showing that the defendant's "conduct has sufficiently received the imprimatur of the State so as to make it 'state' action for purposes of the Fourteenth Amendment." *Blum,* 457 U.S. at 1003. She must show "that the State is responsible for the specific conduct of which the plaintiff complains." *Id.* at 1004. Further, the plaintiff has not alleged facts that would support a finding that the defendant was in a "symbiotic relationship" with the federal government that would support a due process claim. In her response to the motion to dismiss, the plaintiff cited two cases to support her position on this issue. Neither case addresses HAMP, and courts have rejected this argument as applied to HAMP. *See, e.g., de la Salle*, 2010 U.S. Dist. LEXIS 36319, at *3 ("Plaintiff's fourth cause of action alleging a violation of due process fails because defendants are not state actors."). Based upon the foregoing, the plaintiff's due process claim fails.

### *Breach of Implied Covenant of Good Faith and Fair Dealing*

In her complaint, the plaintiff pleads the Servicer Participation Agreement and Treasury Guidelines as the basis for her claim for breach of the implied covenant of good faith and fair dealing:

> 55.    Defendant is obligated by its Servicer Participation Agreement to act in good faith and to deal fairly with each borrower. The purpose of the covenant of good faith is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.
>
> 56.    Defendant has routinely and regularly breached this duty by:
> a. violating Treasury guidelines related to collateralizing charges;
> b. altering Plaintiff's income figure and penalizing her for refusing to accept their altered and fictional figure, and the inflated monthly payment dictated by this income figure.
> c. denying her application for an impermissible reason.

(Compl. ¶¶ 55-56).  Also, in her Prayer for Relief, the plaintiff includes a request for "specific performance of Defendant's contractual obligations with Fannie Mae" (compl. at p. 17).

A prerequisite for action for breach of the covenant of good faith and fair dealing must be a contract between the plaintiff and the defendant.  *See Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502, 507-508 (S.C. Ct. App. 2002) (holding that father could not bring claim for breach of covenant of good faith and fair dealing because he was not a party to the contract at the time of the alleged wrongdoing).  Further, failure to modify a loan under HAMP does not give rise to a claim for breach of the implied covenant of good faith and fair dealing when a plaintiff does not allege that she is a party to the contract.  *See Robinson v. Wells Fargo Bank, N.A.*, No. CV 09-2066-PHX-JAT, 2010 WL 2534192, at *8 (D. Ariz. June 18, 2010) (dismissing contract claims based on servicer's failure to modify loan under HAMP because, *inter alia*, plaintiffs did not allege that the lender breached a contract with them); *Zendejas v. GMAC Wholesale Mortg. Corp.,* No. 1:10-CV-00184 OWW GSA, 2010 WL 2490975, at *7 (E.D. Cal. June 16, 2010) (dismissing claim for breach of good faith and fair dealing because plaintiff did not identify a contract that gave rise to this claim after lender denied HAMP loan modification).

Although the plaintiff identified the Servicer Participation Agreement between the defendant and Fannie Mae as giving rise to the duty of good faith and fair dealing, she has not – and cannot – allege that she was a party to the contract.  Moreover, she has not alleged that she is a third-party beneficiary of contracts with others and is not able to prove that theory even if it had been alleged.  *See, e.g., Hoffman v. Bank of Am.*, No. C 10-2171 SI, 2010 WL 2635773, at *3 (N.D. Cal. June 30, 2010) ("[N]umerous district courts have interpreted identical HAMP agreements and have come to the conclusion that a borrower is not a third party beneficiary."); *Escobedo v. Countrywide Home Loans, Inc.*, No. 09cv1557 BTM (BLM), 2009 WL 4981618, at *2 (S.D. Cal. Dec. 15, 2009); *see also Simmons v. Countrywide Home Loans, Inc.*, No. 09cv1245 JAH (JMA), 2010 WL 2635220,

at *5 (S.D. Cal. June 29, 2010 (dismissing claim for breach of contract based on servicer participation agreement because plaintiff had no enforceable right under the agreement).

In her response in opposition to the motion to dismiss, the plaintiff argues that her claim is based on a contractual relationship between the defendant and her. She relies on the following documents that she now claims created a contractual relationship: a loan payoff statement, HAMP application, congratulations letter from the defendant, and a letter from the defendant denying her second application for modification (pl. resp. m. to dismiss at 19 n.43). As discussed above, however, this is not what the plaintiff alleged in her complaint. Nonetheless, even if the plaintiff had based this claim on the documents she references in her response, the claim would be subject to dismissal. The plaintiff has not pleaded a claim for breach of contract, and South Carolina does not recognize a separate claim for breach of good faith and fair dealing. In *RoTec Services, Inc. v. Encompass Services, Inc.*, 597 S.E.2d 881 (S.C. Ct. App. 2004), the court held that "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract," and, instead, the claim was "subsumed under the claim for breach of contract." *Id.* at 883-84. The plaintiff has not alleged the elements for breach of contract as she has not identified any provision in a contract with the defendant that was breached, and she has not alleged damages (nor could she because she is not entitled to any modification). Therefore, this claim should be dismissed.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the defendant's motion to dismiss (doc. 19) should be granted.

January 5, 2011                                              s/Kevin F. McDonald
Greenville, South Carolina                          United States Magistrate Judge